477 P.2d 572

**SOUTHWEST COOPERATIVE WHOLE-SALE, United Producers and Consumers Cooperative, Arizona corporations, Petitioners,**

v.

**The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MARICOPA, the Honorable Thomas Tang, Judge, Larry Berry and Arnold Rivera, Respondents.**

No. 1 CA–CIV 1519.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 10, 1970.

Rehearing Denied Feb. 23, 1971.

Review Denied March 23, 1971.

Robert K. Park and Cecil A. Edwards, Jr., Phoenix, for petitioners.

Charles M. Brewer and James D. Lester, Phoenix, for respondents.

HAIRE, Judge.

The question before us in this special action proceeding is whether an industrially injured workman who accepts workmen's compensation benefits *ipso facto* waives the right to bring an action against what we will refer to as an "allegedly noncomplying employer"—i. e., an employer who has prior to the time of the injury in question allegedly failed to keep posted notices of the right of a workman to reject the provisions of the Workmen's Compensation Law and thereby retain the right to sue the employer. *See* A.R.S. § 23–906, subsecs D and E. It is contended on behalf of the injured workman that the acceptance of compensation must, in order to constitute a binding election, be accompanied by actual knowledge on the part of the injured employee that he has a possible alternative remedy against the employer and knowledge that the right to assert such remedy is lost if compensation is accepted.

All of the following pertinent events took place in 1970. Larry Berry, the respondent real party in interest, sustained a work-related injury on February 2, while in the course of his employment with one of the two petitioning employers, who were covered by valid policies of workmen's compensation insurance issued by the State Compensation Fund. Employer's and physician's reports of injury were received by the Fund shortly thereafter. On February 17, Berry executed a "Workman's Report of Injury and Application for Benefits", which was forwarded to the Fund. The claim was accepted for benefits by the Fund on February 18, 1970, and on the same date the Fund issued its check in the amount of $59.84 to Berry for temporary total disability benefits for the period of February 3 through February 16. On February 27, the Industrial Commission received a letter signed by Berry informing the Commission that he had retained his

present attorneys "to represent me in connection with the above captioned claim." On March 3, March 5, and March 18, the Fund issued checks payable to Berry, in amounts of $64.11, $73.69, and $102.23, for compensation payable through March 18. On March 24, Berry signed and sent to the Fund a "Workman's Monthly Claim Form". On April 2, the Fund issued another check payable to Berry in the amount of $102.23, for compensation through April 2. Berry cashed each of the five checks issued to him, which totalled $402.10. It also appears that the Fund was billed for and paid Berry's medical expenses in the amount of $2,208.75.

On or about April 13, Berry filed an "Application for Award" with the Industrial Commission, requesting that proceedings on his claim be held in abeyance. At the same time, Berry filed an action in the Superior Court against the two petitioners and another individual, alleging that he was engaged in a hazardous employment, and seeking recovery for his injury under the Employers' Liability Law, A.R.S. § 23–801 et seq. After some discovery proceedings, petitioners moved for summary judgment on the ground that Berry, having accepted compensation, waived any right he may have had to bring an action against his employer. Berry opposed the motion on the ground that his attorneys did not know until April 9 that his employer may not have complied with the notice posting requirements of § 23–906, subsec. D, and that he himself did not know until April 10 that he had the possible alternative remedy of bringing suit against the employer instead of receiving workmen's compensation benefits. The petitioners conceded for the purpose of their motion for summary judgment that there may have been a failure to comply with the statutory notice-posting requirements. The motion was denied by

the respondent trial judge, and petitioners seek to have this ruling reversed by this special action.

 Respondents first argue that this Court should not review by special action the denial of a motion for summary judgment. As we have observed, the denial of a motion for summary judgment is a nonappealable order which " * * * decides only one thing—that the case should go to trial." Navajo Freight Lines, Inc. v. Liberty Mutual Ins. Co., 12 Ariz.App. 424, 471 P.2d 309, 313 (1970). Our Supreme Court has indicated, however, that this lack of final adjudicatory effect does not preclude (and, by its nonappealable character, permits) review of the negative ruling by means of a special action. See Kilpatrick v. Superior Court, 105 Ariz. 413, 466 P.2d 18 (1970), and Renck v. Superior Court of Maricopa County, 66 Ariz. 320, 187 P.2d 656 (1947). In our view, our jurisdiction to review by special action the denial of a motion for summary judgment should be sparingly exercised, and principally in cases where the critical issue is one of broad public interest, where judicial error is plainly apparent, and where review might terminate or importantly affect a number of litigants or similar litigations.[1] We think that special action review is appropriate in the present case.

We first set forth the constitutional and statutory provisions which bear upon the legal issue before us. A proviso in Article 18, § 8 of our constitution, A.R.S., which mandated enactment of a Workmen's Compensation Law, states as follows:

"* * * provided that it shall be optional with any employee engaged in any such private employment to settle for such compensation, or to retain the right to sue said employer as provided by this Constitution; * * *."

1. Cf. City of Phoenix v. Peterson, 11 Ariz. App. 136, 142, 462 P.2d 829, 835 (1969), discussing the factors to be considered in determining whether this Court should grant or withhold extraordinary relief in special actions brought to review Superior Court discovery orders.

A further proviso, immediately following the foregoing, reads as follows:

"* * * and, provided further, in order to assure and make certain a just and humane compensation law in the State of Arizona, for the relief and protection of such workmen, their widows, children or dependents, as defined by law, from the burdensome, expensive and litigious remedies for injuries to or death of such workmen, now existing in the State of Arizona, and producing uncertain and unequal compensation therefor, such employee, engaged in such private employment, may exercise the option to settle for compensation by failing to reject the provisions of such Workmen's Compensation Law prior to the injury."

A.R.S. § 23–906 was obviously enacted to implement the foregoing provisions. It reads, in full, as follows:

"§ 23-906. *Liability under chapter or or under common law of employer securing compensation; right of employee to make election; procedure for making election*

"A. Employers who comply with the provisions of § 23–961 as to securing compensation shall not be liable for damages at common law or by statute, except as provided in this section, for injury or death of an employee wherever occurring, but it shall be optional with employees to accept compensation as provided by this chapter or to reject the provisions of this chapter and retain the right to sue the employer as provided by law.

"B. The employee's election to reject the provisions of this chapter shall be made by a notice in writing, signed and dated by him and given to his employer, in duplicate in substantially the following form:

'To (name of employer):

You are hereby notified that the undersigned elects to reject the terms, conditions and provisions of the law for the payment of compensation, as provided by the compulsory compensation law of the state of Arizona, and acts amendatory thereto.'

"C. The notice shall be filed with the employer prior to injuries sustained by the employee, and thereafter within five days the employer shall file with the commission the duplicate of the notice so served by the employee. All employees shall be conclusively presumed to have elected to take compensation in accordance with the terms, conditions and provisions of this chapter unless the notice in writing has been served by the employee upon his employer prior to injury.

"D. Every employer engaged in the occupations designated in this chapter shall post and keep posted in a conspicuous place upon his premises, in all languages spoken by his employees and available for inspection by all workmen, a notice in substantially the following form:

'All employees are hereby notified that in the event they do not specifically reject the provisions of the compulsory compensation law they are deemed by the laws of Arizona to have accepted the provisions of such law, and to have elected to accept compensation under the terms of such law, and that under the terms thereof employees have the right to reject the same by written notice thereof prior to any injury sustained, and that blanks and forms for such notice are available to all employees at the office of this company.'

"E. If an employer fails to post and keep posted the notice as required by this section, or fails to keep available at the place where the employees are hired the blank forms of notice to be signed by the employee, no employee who thereafter engages in employment for such employer, during the time that the notices are not posted or during the time that the blanks are not available, shall be deemed to have accepted the provisions of this chapter, and it shall be optional for such employee, if injured during the period

when blanks were not available or the notice was not posted, to accept compensation under the provisions of this chapter or maintain other action against the employer."

The other key statutory provision in the problem before us is A.R.S. § 23–1024, subsection A. Prior to January 1, 1969, this statutory subsection read as follows:

"*§ 23–1024. Choice of remedy as waiver of alternate remedy*

"*A.* An employee, or his legal representative in event death results, who makes application for an award, or with the consent of the commission accepts compensation from an employer, waives the right to exercise any option to institute proceedings in court."

The subsection as amended effective January 1, 1969 is applicable in the present case. It reads as follows:

"*§ 23–1024. Choice of remedy as waiver of alternate remedy*

"*A.* An employee, or his legal representative in event death results, who accepts compensation waives the right to exercise any option to institute proceedings in court against his employer."

Turning to the decisional authorities, our Supreme Court has made it clear that where the right of an injured workman to sue a third party (i. e., non-employer) tort-feasor is in question, the employee will not be held to have elected the remedy of workmen's compensation to the exclusion of such right in the absence of facts showing that the injured employee had knowledge of the alternative remedy (suit against the third-party tort-feasor) *and* knowledge that acceptance of workmen's compensation benefits is a waiver of the right to assert such remedy. State ex rel. Industrial Commission v. Pressley, 74 Ariz. 412, 416, 250 P.2d 992, 994 (1952); *see, also,* United States v. Miller, 331 F.2d 414 (9th Cir. 1964); Mer-

ritt-Chapman & Scott Corporation v. Frazier, 289 F.2d 849 (9th Cir. 1961); and Taylor v. Hubbell, 188 F.2d 106 (9th Cir. 1951). These decisions were rendered in actions brought pursuant to A.R.S. § 23–1023, which, prior to its amendment effective January 1, 1969, provided that an injured employee had to "* * * elect whether to take compensation * * * or to pursue his remedy against such other [third] person." [2] The respondent Berry contends that the rationale of these third-party tort-feasor cases must be applied in the case of the allegedly noncomplying employer. He contends that only by such application will he be afforded the "reasonable election" referred to in that part of the decision in Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 444, 242 P. 658, 666 (1926), which held that a portion of the Workmen's Compensation Law as originally enacted in 1925 was unconstitutional in its attempt to wholly deny to employees in non-hazardous employments their constitutional right to elect to sue the employer. The term "reasonable election" is also referred to in Moseley v. Lily Ice Cream Co., 38 Ariz. 417, 300 P. 958 (1931).

In the only Arizona case which squarely considers the question put to us, Division Two of this Court held in Ream v. Wendt, 2 Ariz.App. 497, 410 P.2d 119 (1966), that under § 23–1024, subsec. A as it existed prior to 1969, the statutorily defined *act* of applying for an award of compensation or accepting benefits operated as a binding waiver of the right to sue an allegedly noncomplying employer, regardless of any lack of knowledge. Petitioners rely upon Ream as the basis of their present petition. The respondent Berry contends that Ream was incorrectly decided, and that its error is confirmed in Morgan v. Hays, 102 Ariz. 150, 426 P.2d 647 (1967). On analysis, we are of the view that the court correctly concluded in Ream that the Arizona consti-

---

2. No such provision appears in present A.R.S. § 23–1023, under which an injured employee can accept compensation and also retain for one year the right to institute an action against a third-party tort-feasor. This change in the law accounts for the change in the language following the word "waives" in A.R.S. § 23–1024, subsec. A.

tution does not require, as a prerequisite for a binding election to accept workmen's compensation, actual knowledge of a possible right to recover from a noncomplying employer and an intent to elect against such possible remedy.

No worthwhile purpose would be served by our reworking the ground covered by the Ream opinion, to which the reader is referred. We shall briefly refer only to what we consider to be the crux of the matter.

The legislature has plenary power to legislate in the area of workmen's compensation, provided only that it does not transgress a constitutional limitation. *See, generally,* Kilpatrick v. Superior Court, 105 Ariz. 413, 466 P.2d 18 (1970). Where an action against the employer is involved, Article 18, § 8, reserves to the employee the right to exercise an option in order to avoid the loss of his constitutionally protected common law negligence cause of action. This constitutional section further provides that the employee " * * * may exercise the option to settle for compensation by failing to reject the provisions of such Workmen's Compensation Law prior to the injury." The legislative implementation of this constitutional provision, § 23–906, creates a system of waiver, which system includes a combination of posted notices and inaction by an employee following his presumed knowledge of the option open to him. The waiver which inaction works under this system has been upheld,[3] and it presumably applies alike to the illiterate, the unadvised, the ill-advised, and even to the employee who may have formulated a clear but as yet not acted upon intent to reject the coverage of the Workmen's Compensation Law. This waiver system does not supply a "reasonable election" to the employee, if "reasonable election" is deemed to be a term of art incorporating actual knowledge of alternative remedies and an intent to elect one to the exclusion of another.

If, as is unchallenged here, the legislature can constitutionally predicate a binding election upon ignorant inaction prior to injury, we fail to see why it cannot constitutionally predicate a binding election upon the far more affirmative act of accepting compensation after injury. The question of the loss by the injured employee of his right to sue his employer is constitutionally distinguishable from the question of whether the injured employee has effectively waived or lost his right to sue his fellow employee or third-party tort-feasor. As pointed out in the Kilpatrick and Pressley decisions, *supra,* Article 18, § 6, preserves to the injured employee his common law negligence cause of action as against both his fellow employee and the third-party tort-feasor and neither Article 18, § 6 nor Article 18, § 8 contain any provisions which would authorize legislative derogation of that constitutionally protected right. On the other hand, Article 18, § 8 does provide that, *as against his employer,* the injured employee " * * * may exercise the option to settle for compensation by failing to reject the provisions of such Workmen's Compensation Law prior to the injury." This constitutional provision does not make the loss of the right to sue the employer dependent upon the application of common law principles of waiver. Rather, insofar as *constitutional* requirements are concerned, only one criterion is mentioned— "failure to reject * * * prior to the injury."

In the fact situation before this Court it is clear that the injured employee did not in any way reject the provisions of the Workmen's Compensation Law prior to his injury. Based upon this failure alone, the legislature constitutionally could have provided for the loss of his right to sue his employer. However, the legislative enactments have not gone as far as authorized by the constitution. Rather, the legislature has required an affirmative act of acceptance of compensation as a pre-condition to

3. *See* Corral v. Ocean Accident and Guarantee Corp., Ltd., 42 Ariz. 213, 23 P.2d 934 (1933), and Williams v. Magma Copper Co., 5 Ariz.App. 236, 425 P.2d 138 (1967).

the loss of the right to sue the employer where the employer has failed to post the legislatively (but not constitutionally) required notices. In doing so, the legislature has not unconstitutionally deprived an employee of the right to sue the employer. It has, on the other hand, softened what may be considered by some to be a rather harsh constitutional proviso by retaining for an employee the right to sue his employer *after* an injury, notwithstanding the absence of rejection, up and until the employee accepts workmen's compensation benefits. We therefore hold that A.R.S. § 23–1024, subsec. A does not transcend any constitutional limitations, and that where an injured employee has failed to reject the provisions of the Workmen's Compensation Law prior to his injury, he loses his right to sue his employer by accepting compensation, even though the employer may have failed to post the statutorily required notices. In our opinion the constitution recognizes that the employer has a key position in the workmen's compensation scheme, and this position gives him a legislatively protectible interest which a third-party tort-feasor or fellow employee could never enjoy.

We do not think that Morgan v. Hays, 102 Ariz. 150, 426 P.2d 647 (1967), indicates a contrary result. In Morgan, an injured employee sought to bring an action against his employer after receiving workmen's compensation benefits. The Superior Court held itself without jurisdiction to entertain the action, stating as one ground for its holding the following:

> "The plaintiff, by making a claim for Workmen's Compensation benefits and continuing to accept the same with full knowledge of his legal rights and with full knowledge of the legal conditions precedent to a suit against his employer, waived any right or option, if any, which he ever had to file any claim in this Court against his employer." (102 Ariz. 155, 426 P.2d 652).

While the Supreme Court, in Morgan, found substantial evidence to support this finding and affirmed the trial court's ruling, it did not itself hold that the "knowledge" to which the trial court referred was a necessary element of the waiver. If, as in the Morgan case, a knowledgeable waiver can be found, it furnishes a strong, ready basis for affirmance without necessitating an inquiry into the question of whether or not such a *knowledgeable* waiver is required. The Ream case was not cited in the briefs before the Supreme Court in Morgan and the issue now before us was not the subject of extensive discussion therein.

The respondent Berry also cites Heeter v. Moore Drug Co., 104 Ariz. 41, 448 P.2d 391 (1968), but we do not think that it adds anything to the Morgan holding.

■ Finally, we note that the pre-1969 version of § 23–1024, subsec. A provided that a waiver could be predicated upon either one of two acts, i. e., (1) making an application for an award, or (2) accepting compensation from an employer with the consent of the Industrial Commission. The new law, by contrast, provides for a waiver only when the employee "accepts compensation". So far as appears, the legislature by this change merely "de-waiverized" one of the two acts previously referred to, and made acceptance of benefits the sole statutory test. In view of the fact that "compensation" is defined in A.R.S. § 23–901, as amended effective January 1, 1969, to mean "the compensation and benefits provided by this chapter", we think it must be held that temporary total disability benefits must be held to be within the terms of present § 23–1024, subsec. A. It being unnecessary to this decision, we express no opinion as to whether the payment of non-emergency medical expenses are also "compensation" within the terms of § 23–1024, subsec. A.

The issuance by this Court of its mandate herein will constitute an order to the trial court to grant petitioners' motion for summary judgment.

EUBANK, P. J., and DONOFRIO, J., concur.